### SHOMO *v.* RANSOM.

The declaration alleging an unconditional contract for the sale of five hundred cases of eggs, and the evidence not establishing such a contract but one materially variant therefrom, there was no error in granting a nonsuit, whether the affidavit which the court considered was properly in evidence or not.

May 22, 1893.

Action for damages. Before Judge WESTMORELAND. City court of Atlanta. January term, 1893.

Shomo sued Ransom for failure of Ransom to deliver eggs, alleging that in the spring of 1891, he purchased from Ransom 500 cases of eggs, 30 dozen in a case, at

v 92-7

10 cents per dozen, delivered in Atlanta; that they were to be delivered at once in instalments until the order was filled, but not to extend in time beyond the summer of 1891; and that Ransom shipped 42 cases containing 1,260 dozen, but failed and refused to ship the remainder, and still refuses to comply with the contract; whereby plaintiff was damaged, etc. A nonsuit was granted, and plaintiff excepted. He also excepted to the ruling (made·on the argument of the motion for nonsuit) that the contents of an affidavit, hereafter mentioned, were in evidence.

In behalf of plaintiff one Hudgins testified: Was a broker in Atlanta, and had represented Ransom in some business. Had some correspondence with Ransom as to the sale of five hundred cases of eggs to Shomo, and had written Ransom if he could fill and accept such order. The order was five hundred cases to be delivered, at ten cents, between the 1st and 25th of July, in Atlanta. Did not know how many letters he wrote Ransom. At the time of his letter of June 30th, eggs were going down to ten cents a dozen. In his letter asking Ransom about witness's customer for five hundred cases of eggs to be delivered between the 1st and 25th of July at ten cents, no name was given, and no name was mentioned in the letters before the 30th of June. Witness sent the telegram dated July 1st. At the time of the sale to Shomo witness represented Ransom and submitted the offers from Shomo to Ransom, expecting to be paid by Ransom. Had no conversation with Shomo in regard to the offer, except that Shomo asked him to make Ransom the offer. Shomo mentioned it a month before, some time in June. Shomo knew witness had written Ransom and Odell & Company; witness told him so in the conversation about the submission of the offers. Up until July 1st, Ransom refused to accept the order, for the reason that eggs were continually fluctuat--

ing. Witness wrote him on the 30th of June, and the next thing Ransom wired him to know who wanted five hundred cases of eggs, and witness answered by wire giving Shomo's name. Shomo told witness to submit the offers to Ransom and Odell & Company. Witness represented Odell & Company at that time. Witness had written Ransom about the offer of Shomo before the telegram of July 1st; the conversation about that offer occurred between Shomo and witness about the 1st of July. In the letter of June 30th, witness wrote Ransom that he had a customer for five hundred cases of eggs, to be delivered between the 1st and 25th of July, in Atlanta, at ten cents a dozen, cases to be returned. Whatever contract was made for Ransom for Shomo was concluded by the latter stating the condition of the offer. In the first letter witness wrote Ransom he wrote that Shomo wanted five hundred cases, and in the next letter mentioned Shomo as his customer; the first letter mentioned no name. This offer was declined until the 1st of July. Shomo submitted this offer or order about the 1st of June. Witness had written Ransom before the telegram from Ransom asking witness who the customer was, but could not say that Ransom had not forgotten it. Ransom telegraphed witness because witness wrote him a letter and asked what about order for eggs. Witness wrote on the last day of June, and next morning received the telegram asking who it was that wanted the eggs. Witness had written, " What about my customer for five hundred cases of eggs," saying nothing of the person; did not remember that he mentioned the price, nor remember all that was in the letter on the subject; the time of delivery between the 1st and 25th of July was in the letter; witness cannot remember definitely whether it was in his last letter or not.—An affidavit made by the witness on October 20, 1891, was read to him, to the effect, that on July 1, 1891, he called

at Shomo's place of business and Shomo asked him to buy eggs for Shomo, witness being a broker; that Shomo knew witness would have to send out orders for them to produce men; that witness telegraphed on July 1, 1891, to Ransom for five hundred cases, or as many as Ransom could sell, but made no positive contract for any definite amount for Shomo; that so far as witness knew, Ransom had never at any time agreed to deliver Shomo, on deponent's order, the full amount of five hundred cases of eggs, but only so many as he could; that there was never any contract that Ransom should deliver any specific number of boxes or cases of eggs, by witness; that witness sold five hundred cases conditionally, provided the order could be filled in thirty days, with the further condition that Ransom would agree to fill the order; that witness sent the telegram annexed, to wit, "A. M. Shomo, 500 cases or as many as you can," which was all the contract made, so far as witness knows; that witness acted as broker, but had no agreement from Ransom that Ransom would fill his orders to any definite amount. The witness stated that the signature to this affidavit was his, and that the statement in it was correct; that he could not make contract, and that in pursuance of Shomo's request he wrote Odell and others. (The reading of this affidavit to the witness and asking him if the statement therein was correct, was not objected to by plaintiff's counsel.) The witness further testified, that the words "my customer" in the letter of June 30th, referred to Shomo, and Ransom could know this from a previous letter witness had written him, which he presumed Ransom had; that the date of the first letter was in June, but he did not remember whether the letter of June 19th was the first written; that his recollection was, he had written a letter and given Shomo's name; that, judging from the letter of June 19th, it seemed to be the first letter written Ran-

som on the subject, but he could not say whether the letter in which Shomo's name was given was before or after.   Ransom did not send witness to Shomo, and did not know about his going to get the order for five hundred cases; did not send him particularly to Shomo but to sell him, witness; and when witness sold he would report and settle up.   At that time there were thirty dozen eggs to the case.

The following telegrams and portions of letters were introduced : Letter of June 19, 1891, from Cason & Hudgins to Ransom: " We have customer for 500 cases to be delivered 1 to 20 July; his offer 10 cts. for Atlanta, and return cases.   If you find you can place any of the amount, let us hear from you."   Telegram of July 1, 1891, from same to same: " A. M. Shomo, five hundred cases, or as many as you can; must be good." Letter of July 1, 1891, from same to same : " We wired you this evening to commence shipping A. M. Shomo eggs as per our letter of yesterday.   We trust the trade will be a satisfactory one in every way."   Letter of July 7th, from Ransom to Cason & Hudgins : " Your order for 500 cases for A. M. Shomo, received.   I wrote him to-day regarding terms, etc., and shipped him 18 cases yesterday.   Will ship his regularly to July 25th, until notified differently."   Letter from Ransom to Shomo of July 7th : " I shipped you to-day, as per C. & H's order, 18 cases eggs, and will ship more till July 25th, provided my terms, etc., are satisfactory with you. My terms are as stamp states.   I guarantee everything to be right.   .   .   I will ship you eggs regularly up to the 25th, unless notified different.   .   .   Will make draft on you for invoice $48.42 to-morrow.   Please honor.   Thanking you for your order, and hoping to do considerable business with you," etc.   Letter of July 7th, from same to same : " Inclosed find bill of lading and invoice of eggs shipped to-day; will ship you con-

siderable more to-morrow." Letter from same to same of July 10, 1891: "Inclosed find bill of lading and invoice of eggs. Will ship you regular next week, and will try and get you in a big lot of eggs. . . Will make draft for same, which please honor."

Shomo testified: Prior to these letters and telegrams he had given an order for eggs to Hudgins. About June 1st Hudgins asked him if he wanted to buy eggs, and he told Hudgins he would take five hundred cases delivered in July, and Hudgins said he would endeavor to get them up. In about a week Hudgins said he could not get anybody to make prices at that time, but would by the first of July. Then witness told him, he thinks, he was willing to pay for eggs ten cents delivered. About July 1st Hudgins told him he had gotten the eggs from Ransom, whom witness does not know. Witness answered the letter of July 7th the same or next day, and told Ransom everything was satisfactory and to let the eggs come as rapidly as possible. He received forty-two cases. When Ransom's contract expired, eggs were worth fourteen cents a dozen; there were thirty dozen to the case. Knows nothing about the telegraphic order, as he sent none, and had no conversation with Ransom. Did not know what the letter dated July 1st referred to, but based the order on another letter from Hudgins. Ransom had until July 25th to ship the eggs, and witness supposed Ransom understood the matter. Ransom was bound and witness was not; witness did not know whether, if he had refused to take the eggs, he could have been sued. He never asked for any written contract, only through Hudgins. Ransom may have been bound to this agent. Witness never signed nor expected to sign any proposition, but wrote the letter to Ransom.

MAYSON & HILL, for plaintiff.
GLENN & MADDOX, for defendant.

BLECKLEY, Chief Justice.

The facts appear in the official report.   There can be no doubt that the contract alleged in the declaration for the sale of five hundred cases of eggs was an unconditional contract.   It is equally certain that no such contract appears in the evidence, for the contract to which that points was conditional and the condition was of such a nature as to render the variance material.   Putting aside other questions raised and discussed in the case, this is a decisive one.   With or without considering the affidavit which was before the court, the judgment of nonsuit was correct.          *Judgment affirmed.*